IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

JODIE R.,[1]

       Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

Case No. 6:19-cv-00107-AA
**OPINION AND ORDER**

AIKEN, Judge:

    Plaintiff Jodie R. brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with the Court's opinion.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

## BACKGROUND

On March 24, 2015, plaintiff applied for DIB. Plaintiff alleged disability beginning July 19, 2012, due to chronic back and ankle pain; migraines; nausea; depression; and right bundle branch blockage. After a hearing, the administrative law judge ("ALJ") determined that plaintiff was not disabled under the Act. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. This action followed.

## STANDARD OF REVIEW

A reviewing court shall affirm the decision of the Commissioner if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotation marks omitted). To determine whether substantial evidence exists, the district court must review the administrative record as a whole, weighing both the evidence that supports and detracts from the decision of the ALJ. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## COMMISSIONER'S DECISION

The Social Security Administration uses a five-step sequential evaluation to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden of proof falls to the claimant at steps one through four,

and with the Commissioner at step five. *Id.*; *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001). At step five, the Commissioner must show that the claimant can adjust to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is disabled. *Id.* If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Id.*; *see also Bustamante*, 262 F.3d at 953–54.

Here, the ALJ found that plaintiff was not disabled. At step one, the ALJ found that plaintiff had engaged in substantial gainful activity from January 2014 to December 2014. However, there had been a continuous twelve-month period during which plaintiff had not engaged in substantial gainful activity. Therefore, the ALJ addressed "the period(s) the [plaintiff] did not engage in substantial gainful activity." Tr. 25. At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease; ankle fracture, status post surgery; affective disorder; and anxiety disorder. At step three, the ALJ found that plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Before proceeding to step four, the ALJ determined that plaintiff's RFC allowed her to perform a range of light work as defined in 20 CFR § 404.1567 (c) and 416.967(c) with these limitations:

> [Plaintiff] can perform tasks involving up to 4 hours of standing/walking, and up to 6 hours of sitting in an 8-hour workday (with normal breaks). She can occasionally push/pull or operate foot controls with the right lower extremity. She can occasionally climb ramps and stairs, but she must avoid climbing ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, or crawl. She must avoid exposure to workplace hazards, such as exposed moving machinery or unprotected heights. She can perform no more than simple, routine tasks. She can tolerate no more than occasional contact with coworkers. She must avoid contact with the general public.

Tr. 27.

At step four, the ALJ found that plaintiff could not perform any of her past relevant work. At step five, the ALJ found that based on plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy where plaintiff could sustain substantial gainful employment despite her impairments. Specifically, the ALJ found that plaintiff could perform the jobs of Electronics Worker, Electrical Accessories Assembler, and Eyeglass Frames Polisher. As a result, the ALJ concluded that plaintiff was not disabled under the Act from July 19, 2012, the alleged onset date, through January 16, 2018, the date of the ALJ's unfavorable decision ("the relevant period").

## DISCUSSION

Plaintiff contends that the ALJ erred in two ways in determining that she was not disabled. First, the ALJ failed to identify legally sufficient bases supported by substantial evidence in the record to reject the medical opinions of Judith Eckstein, PhD, and Scott Alvord, PsyD. Second, the ALJ failed to identify clear and convincing reasons supported by substantial evidence in the record to reject plaintiff's subjective symptom testimony. The Court addresses each argument in turn.

I.    ***Medical Opinion Evidence***

When making a disability determination, an ALJ shall consider and explain the weight afforded to every medical opinion in the record. *See* 20 C.F.R. § 404.1527(c). Social security law recognizes three types of medical sources: (1) treating, (2) examining, and (3) non-examining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. *Id*. More weight is also given to an examining physician than to a non-examining physician. *Id*. To reject the uncontradicted opinion of a treating doctor, an ALJ must state "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If, however, a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id*.

A.    ***Judith Eckstein, PhD***

In August 2017, plaintiff met with Dr. Judith Eckstein for a psychological evaluation, where she reviewed plaintiff's medical records and administered a clinical interview, mental status examination, and Personality Assessment Inventory ("PAI"). Tr. 1338, 1341, 1343, 1345. Based on her evaluation of plaintiff, Dr. Eckstein diagnosed plaintiff with Panic Disorder with Agoraphobia. Tr. 1348. Dr. Eckstein opined that plaintiff's impairment would impact her ability to understand, remember, and carry out complex instructions and make work-related judgments. Tr. 1349–50.

Additionally, Dr. Eckstein concluded that plaintiff's ability to interact appropriately with supervisisors, co-workers, and the public were affected by her impairment, noting her ability to interact appropriately with supervisors and co-workers had marked impairments. Tr. 1350.

In making his findings on plaintiff's RFC, the ALJ considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and gave "more weight" to the State agency psychological consultants' opinions than to Dr. Eckstein's. Tr. 30. The ALJ explained, however, that he did give "some consideration" to Dr. Eckstein's observations about plaintiff's ability to interact with coworkers and the public, noting that the RFC limits plaintiff's contacts with coworkers and precludes contact with the general public. *Id.* Plaintiff asserts the ALJ failed to identify legally sufficient bases supported by substantial evidence in the record to reject Dr. Eckstein's opinions. First, the ALJ reasoned that Dr. Eckstein's opinion was undermined because she was "apparently unaware" of plaintiff's work activity at the call center. Tr. 30. However, a review of the record shows that Dr. Eckstein was in fact aware that plaintiff was fired in 2015 from a call center where "she worked for a year and a half." Tr. 1338. Thus, here, the ALJ's reasoning is contradicted by the record.

Second, the ALJ reasoned that Dr. Eckstein's assessment was inconsistent with contemporaneous mental health treatment records indicating plaintiff was feeling "way better" with prescribed medication and treatment. Tr. 30. The ALJ cited one treatment note to support this proposition. *Id.* (citing Tr. 1359).

When considering mental health impairments' effects on ability to function in the workplace, the ALJ must read a treating physician's statements in context of the overall diagnosis established.  *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").  Here, the ALJ relied on an August 2017 treatment note from Michael McNamara, MSN PMHNP, a mental health professional that had diagnosed plaintiff with Bipolar II Disorder, PTSD, and a history of head injuries from two separate car accidents.  Tr. 1282.  Although the August 2017 note included Mr. McNamara's summaries of past treatment, along with a note that plaintiff had been feeling "way better" and experiencing decreased symptoms in June 2017, on that date in August, the therapist determined that plaintiff's mood was "depressed and anxious."  Tr. 1359.  Mr. McNamara also noted that plaintiff had increased PTSD symptoms of anxiety and nightmares and that, while her moods were "less labile," they were still fluctuating. *Id*.

It is common for mental health symptoms to include cycles of improvement and decline, as a result, this isolated instance of improvement was insufficient to support a conclusion that Dr. Eckstein's assessment was inconsistent with plaintiff's overall record of mental health impairments. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (reasoning that an ALJ may not cherry-pick isolated instances of improved

psychological symptoms when the record as a whole reflects longstanding psychological disability).

Furthermore, the ALJ was required to provide "*specific and legitimate* reasons [] supported by substantial evidence" to reject the examining opinion of Dr. Eckstein. *See Garrison*, 759 F.3d at 1012 (emphasis in original) (internal quotations omitted). Relying on this one showing of improvement is hardly substantial evidence. To satisfy the substantial evidence requirement, an ALJ must provide a detailed and thorough summary of the facts and conflicting evidence. *Id.* (internal citations omitted). Yet, here, the ALJ provided merely one example to support his determination that the evidence conflicted with Dr. Eckstein's finding.

Defendant argues that because an ALJ is not required to accept a medical opinion that is more extreme than a plaintiff's own symptom testimony, the ALJ reasonably discounted Dr. Eckstein's medical opinion. However, the ALJ did not reject Dr. Eckstein's opinion because it was more extreme than plaintiff's testimony. Instead, he rejected the opinion on the basis that it was inconsistent with objective contemporary medical records. Defendant's *post-hoc* rationalization does not provide a basis to affirm the ALJ's decision. *See Burrell. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (establishing that the court may only review the reasons provided by the ALJ in the disability decision).

In sum, the ALJ failed to provide specific, legitimate reasons for crediting the state agency consultants over Dr. Eckstein or otherwise rejecting Dr. Eckstein's

opinions regarding plaintiff's ability to understand, remember, and carry out complex instructions and to tolerate contact with supervisors.[2]  That error was not harmless.

In general, an error is harmless if "it does not negate the validity of the ALJ's ultimate conclusion."  *Cha Yang v. Commissioner of Social Sec. Admin.*, 488 Fed. App'x 203, 204 (9th Cir. 2012) (citation omitted).  However, here, it is not clear the ALJ would have reached the same disability determination if he had included Dr. Eckstein's opined limitations in plaintiff's RFC, since, for example, the vocational expert ("VE") testified that an inability to consistently interact appropriately with coworkers *and* supervisors would preclude an individual from competitive work.  *See* Tr. 79-80.

### B. *Scott Alvord, PsyD*

In October 2015, Disability Determination Services ("DDS") referred plaintiff to Dr. Scott Alvord for a psychological evaluation.  Tr. 1332.  Dr. Alvord reviewed plaintiff's medical records from May 11, 2015, through July 13, 2015, administered a clinical interview and mental status examination, and diagnosed plaintiff with PTSD and Bipolar II Disorder.  Tr. 1332, 1336.  Dr. Alvord opined that plaintiff would not have difficulty performing simple tasks, however, she would have "difficulty accepting instructions from supervisors," "interacting with co-workers and the

---

[2] As plaintiff notes, although the ALJ claimed that that Dr. Eckstein's opinion about plaintiff's interactions with others had been given "some consideration," the ALJ assessed "no limitations" in plaintiff's ability to interact with supervisors.  Tr. 31.  Dr. Eckstein opined that plaintiff had marked impairments in that area.  Tr. 1350.  Accordingly, the record suggests that the ALJ rejected that portion of Dr. Eckstein's opinion.

public," and maintaining regular attendance and normal hours in the workplace without interruptions from her diagnosed mental health conditions.  Tr. 1336.

The ALJ rejected Dr. Alvord's opinion, noting that a state agency consultant had "declined to adopt" the opinions and had concluded instead that plaintiff could sustain simple tasks with "brief and structured" interaction with co-workers and no contact with the general public.[3]  Tr. 29.  The opinion of a non-examining state consultant cannot by itself represent substantial evidence sufficient to justify rejecting the opinion of an examining doctor.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999).  Thus, the state agency consultant's decision not to adopt Dr. Alvord's opinion alone is not a specific and legitimate reason to discount Dr. Alvord's opinion.

The ALJ next reasoned that Dr. Alvord's assessment failed to account for plaintiff's substantial gainful activity in 2014 and that he instead relied "uncritically" on plaintiff's self-report that she could not "keep a job."[4]  Tr. 29.  However, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence to reject a contradicted examining doctor's opinion.  *Ryan*, 528 F.3d at 1198.  Although Dr. Alvord's report does not expressly state that plaintiff worked for 12-months prior to their interview, it does demonstrate that Dr. Alvord questioned about her work history, and plaintiff explained that she has done manual labor tasks, CNA work,

---

[3] The ALJ's decision did not expressly reject or assign particular weight to Dr. Alvord's opinion. Tr. 29.  Nevertheless, the ALJ effectively rejected Dr. Alvord's opined mental limitations by assessing a mental RFC with less restrictive limitations.  *Compare* Tr. 1336 *with* Tr. 27.

[4] In his evaluation, Dr. Alvord noted that plaintiff stated she "can't keep a job," Tr. 1333, and that she was fired from her most recent job because of her mental health issues.  Tr. 1334.

office work, and most recently was fired from a job as a front desk clerk at a hotel because she was "acting crazy". Tr. 1333. Thus, review of the record indicates the ALJ's reasoning may be contradicted, and a reliance on plaintiff's isolated statement did not sufficiently support his conclusion that Dr. Alvord based his opinions on plaintiff's self-report. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (instead of merely "offer[ing] his conclusions," an ALJ must explain his own interpretations of the medical evidence and analyze why they, rather than the examining doctor's, are correct). As a result, the ALJ did not provide substantial evidence to reject Dr. Alvord's opinion.

Because the ALJ cannot solely rely on non-examining state agency consultants and provided only a single unsupported example to discredit Dr. Alvord's opinion, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence to reject his medical opinions. This error was not harmless. Because the VE testified that the inability to consistently interact with supervisors and co-workers and the need for additional breaks to manage mental health symptoms would ultimately preclude competitive work, Tr. 79–80, it is not clear whether the ALJ would have reached the same disability determination had he included Dr. Alvord's limitations opinions. *See Cha Yang*, 488 Fed. App'x at 204.

## II.    *Plaintiff's Subjective Symptom Testimony*

In her initial application materials, her Function Report, and at her hearing before the ALJ, plaintiff offered testimony about the nature and extent of the symptoms she experienced from her physical and mental health impairments.

The ALJ makes a credibility determination to assess the subjective symptom testimony of a claimant amidst a two-step process that, first, evaluates the existence of an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the symptoms and, second, addresses the intensity, persistence, and limiting effects of the alleged symptoms based on an examination of the entire record. 20 C.F.R §§ 404.1529(a), (c)(l); 416.929(a), (c)(l); *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). When a claimant's medically documented impairments reasonably could be expected to produce some degree of the symptoms complained of and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). "This is not an easy standard to meet: '[t]he clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*, 775 F.3d at 1015 (citation omitted).

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not "entirely consistent" with the record as a whole. Tr. 28. The ALJ reasoned that plaintiff's limitations were not fully supported by the objective medical evidence contemporaneous to the alleged onset date and that, despite her chronic health problems, the evidence concerning her resumed substantial gainful activity in January 2014 weighed against "the presence of a debilitating pain condition." Tr. 29.

Page 12 – OPINION AND ORDER

### A.    *Physical Symptoms*

In her initial application, plaintiff explained that when she worked for "a couple" of days in a row, she would be in so much pain the following days that she could not get up.  Tr. 232.  In her Function Report, plaintiff disclosed that due to the pain in her back and ankle, it is "impossible to sit or stand for any length of time."  Tr. 245.  Similarly, at her disability determination hearing, plaintiff testified that after breaking her ankle she has had two surgeries making it very difficult for her to walk or be on her ankle for "any length of time" without causing her "great pain."  Tr. 56.  Plaintiff further reported she had back surgery and the resulting hardware in her back also causes her pain.  *Id.*  Plaintiff explained that she can only sit for about 45 minutes and is then forced to stand because it gets very uncomfortable.  Tr. 58.

When discrediting a plaintiff's subjective symptom testimony regarding the severity of her impairments, "the ALJ [is] required to point to specific facts in the record."  *Burrell*, 775 F.3d at 1138 (citing *Vazquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009) (original emphasis and ellipses omitted)).  Here, the ALJ provided multiple facts from the record to support his rationale that plaintiff's physical symptom testimony was "not entirely consistent" with objective medical evidence.[5]  Pointing to the record, the ALJ reasoned that the medical evidence suggested plaintiff's complaints of severity were inconsistent with the medical records' indication of no

---

[5] For instance, although medical records indicated complaints of low back pain requiring medication, the ALJ reasoned that upon examination plaintiff was determined to be "in no apparent distress," while medical records indicated that "straight-leg raise testing was negative bilaterally."  Tr. 29.  The ALJ reasoned that although plaintiff complained of worsening back pain in 2015 and told her treatment provider that her pain went from "intermittent" to "all the time", she again presented in "no apparent distress" with negative straight-leg raise testing.  Tr. 29.  The ALJ further pointed out that although plaintiff complained of ankle pain, her joints were stable with normal range of motion.  *Id.*

visible distress from physical tests for pain. As a result, the ALJ's rejection of plaintiff's complaints of her impairments' severity was based on specific, clear, and convincing examples from the objective medical evidence. Although subjective pain testimony may not be rejected on the sole basis that it is not consistent with objective medical evidence, "the medical evidence is still a relevant factor in determining the *severity* of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (emphasis added); 20 C.F.R. §404.1529(c)(2). Moreover, the ALJ provided an additional specific, clear, and convincing reason to reject plaintiff's testimony.

In addition to pointing to objective medical evidence, the ALJ discredited plaintiff's symptom testimony because plaintiff's reported work activity during 2014 was not consistent with her alleged limitations due to pain. Tr. 29. The ALJ should evaluate all avenues that relate to the subjective complaints, including the claimant's prior work history, when making a credibility determination. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (noting that when making a credibility determination, "an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record"). The ALJ reasonably noted the inconsistency with plaintiff's work history and her allegations of pain when discrediting her physical pain testimony. Therefore, the ALJ provided additional support for his reasoning to show that the severity of the symptoms alleged were inconsistent with the record as a whole. Because of the reasoning discussed above, the ALJ did not err in his rejection of plaintiff's physical symptom testimony.

**B.**    *Mental Health Symptom Testimony*

At her hearing, plaintiff also testified that she experiences anxiety and panic attacks when driving longer distances, and because of her anxiety, she "ends up feeling like everyone is against her." Tr. 51, 56, 57. She explained that her anxiety caused her to lash out at employers and coworkers, which lead to multiple terminations from past jobs. Tr. 59, 60, 61. Plaintiff further disclosed that she has daily anxiety, two panic attacks a week that last from 5 to 45 minutes, and two, hour long or more panic attacks each month. Tr. 68, 69. Additionally, plaintiff stated that because of her anxiety she must leave her workstation often and take extra unpermitted bathroom breaks to calm down which has led to write ups from supervisors and employers. Tr. 70.

Unlike the ALJ's reasons for discrediting plaintiff's physical symptom testimony, the ALJ's reasons for discrediting this testimony are unclear. While the ALJ relied on specific objective medical evidence to reject plaintiff's *physical* symptom testimony, he failed to specify what evidence undermined the plaintiff's *mental health* symptom testimony, citing no mental health records whatsoever. Similarly, the ALJ appears to have used plaintiff's 2014 work history to undermine only plaintiff's pain testimony, reasoning that the work "argues against the presence of a debilitating *pain* condition." Tr. 29 (emphasis added).

Thus, the ALJ erred in rejecting plaintiff's mental health symptom testimony without explanation. As a result, the ALJ prevented this Court from being able to meaningfully review his decision by failing to provide a reason for his rejection of

plaintiff's mental health symptom testimony.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

## III.    *Type of Remand*

Although reviewing courts generally remand to the agency for "additional investigation or explanation," *Florida Power & Light Co. v. Lorio*, 470 U.S. 729, 744 (1985), Congress has granted courts some additional flexibility in § 405(g) "to reverse or modify an administrative decision without remanding the case for further proceedings." *Harman v. Apfel*, 211 F.3d 1172, 1177–78 (9th Cir. 2000); *see also Garrison,* 759 F.3d at 1019.   Courts also have discretion to remand for further proceedings or for the immediate payment of disability benefits.  *Harman*, 211 F.3d at 1178.   However, generally, a remand for benefits is only appropriate in rare circumstances, *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004), and should only be utilized where "no useful purpose would be served by further administrative proceedings, or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision." *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir.1989) (citations omitted).

Under the Ninth Circuit's "credit-as-true" doctrine,[6] this Court must undertake a three-step inquiry to make that determination.  *Burrell*, 775 F.3d at 1141.  The reviewing court must first determine whether the ALJ committed harmful legal error.  *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("such as failing to provide legally sufficient reasons for rejecting evidence").  Second, if the court finds

---

[6] The doctrine applies to both claimant testimony and medical opinion evidence.  *See Garrison*, 759 F.3d at 1020 (citing *Hammock v. Bowen*, 879 F.2d 498, 504 (9th Cir. 1989)).

such an error it must "review the record as a whole and determine whether it is fully developed, [] free from conflicts and ambiguities, and all essential factual issues have been resolved." *Id*. (quotation marks omitted).    Third, if the court does determine that the record has been fully developed, and there are no outstanding issues left to be resolved, the court must consider whether "the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true." *Id*. (quotation marks omitted).

Here, the first step is satisfied because the ALJ (1) failed to provide specific, legitimate reasons to reject Dr. Eckstein's and Dr. Alvord's opinions and (2) failed to give sufficiently specific clear and convincing reasons as to why plaintiff's statements regarding her mental health symptoms were inconsistent with other evidence.  At the second step, however, the record is not fully developed or free from conflicts and ambiguities.  For example, Dr. Eckstein's and Dr. Alvord's opinions were improperly weighted and contain limitations not addressed by the ALJ.  *See Treichler v. Comm'r of Soc. Sec. Admin, 775 F.3d 1090. 1105* (9th Cir. 2014) ("Where, as in this case, an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Additionally, although the ALJ failed to provide clear and convincing evidence to reject plaintiff's mental health symptom testimony, it is not sufficiently clear that evidence fails to exist.  For instance, defendant notes that not only did plaintiff work for 12 months during the relevant period, but she also looked for additional work and received unemployment benefits in 2016.  *See* Tr. 53.  This may be a relevant

consideration because, when evaluating reliability of symptom testimony, an ALJ may consider a claimant's search for work and continued receipt of unemployment benefits. *See Bray*, 554 F.3d at 1227; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161–62. Thus, although this *post-hoc* rationale does not provide a basis for the Court to affirm the Commissioner's decision, it casts "serious doubt" on plaintiff's disability claim. *Dominguez*, 808 F.3d at 407 (citing *Burrell*, 775 F.3d at 1141) (implying that the court may remand for further proceedings when "the government has pointed to evidence in the record that the ALJ overlooked, and explained how that evidence casts into serious doubt the claimant's claim to be disabled"). Accordingly, remand for further proceedings is the appropriate remedy.

On remand the ALJ shall reevaluate Dr. Eckstein's and Dr. Alvord's opinions and plaintiff's mental health symptom testimony and either credit them as true and revise the RFC accordingly, or provide legally sufficient reasons for any portion that is rejected.

## CONCLUSION

The Commissioner's decision is REVERSED and the case is REMANDED for further proceedings consistent with the Court's opinion.

IT IS SO ORDERED.

Dated this <u>11th</u> day of <u>  February  </u> 2021.


_____ /s/Ann Aiken _____
Ann Aiken
United States District Judge

Page 18 – OPINION AND ORDER